May it please the court. Mr. Cornette's sentence in this case is more than eight years above the statutory maximum that would apply but for the ACCA enhancement and we are asking the court to hold that he's entitled to a resentencing based on his Johnson claim. To do that the court has to answer three questions. First, have we made the threshold showing required to get back into court on a second or successive motion? Second, does his Johnson claim have merit? That is once we factor Johnson in, does he still have three predicates under current law? And third, does his claim fall outside the scope of his appeal waiver? Well let me ask you this way. If he has his Johnson claim and it's retroactive. Yes. So could an argument be made and I'm thinking about this in light of one of the panelists that's written Archie. It may or may not have any effect. Could the argument be made that the sentence in the first instance was unlawful? Yeah, I think yes. That would be exactly correct. It would be an illegal sentence because it exceeded the statutory maximum. If I'm understanding the question correctly. So from a policy standpoint, I take it you think that's reasonable to be able to get behind the appellate waiver. Absolutely. We think this court's case law demands that outcome. And I point to two separate sets of case law. The first is the Marin case and the general case. And I would point in particular to footnote four in general which says that Marin stands for the proposition quote that arguments contending that a sentence exceeds the statutory maximum are not barred by contractual waiver. And so that has been, I know the government has this argument that Marin is dicta, that Marin only applies where it's some kind of capricious exceeding of the statutory maximum. But that's not the way this court's interpreted it in general. We think that principle is absolutely what we have going on here. We have in that case it was an apprendee argument. In this case it's a Johnson argument. They considered, the court considered the merits then should consider the merits now. And I think you get to that same result through the more recent case law through the Adams case and the Newbold case. Adams says if a claim would result in a miscarriage of justice, it's outside the scope of an appellate waiver. And Newbold says this exact kind of error that we have here, an ACCA error based on a retroactive decision is one that creates a miscarriage of justice. So I think you get past the appellate waiver for those reasons. And so then if we start with what I outlined as sort of the first question, which is the threshold showing. On that issue, I think we are in this case on all fours with Winston. As in Winston, this is a second or successive motion. As in Winston, the record here is silent. The district court did not specify which provision of the violent felony definition it was relying on in imposing the ACCA sentence. And because of that, just as in Winston, we've made the threshold showing that gets us to the merits question of whether he has three predicates left under current law. And now this highlights I think one of the core disputes that we have with the government. The government would like to merge the merits question under current law and the threshold question kind of into one single historical inquiry based solely on the facts of what was said at the time of sentencing. And I will acknowledge that they have support for that in other circuits. The 11th Circuit in Demon and Moore have adopted that rule. The 6th Circuit in Potter has as well. But this court and a couple of others have gone the other way. Winston sets out the two-part test that we outlined in the briefs. The 9th Circuit followed Winston in the Giozzo's case. And the 3rd Circuit more recently has followed Winston in the Pepper's case. So that would give one of you all, regardless of how the case turns out, something to take up. Absolutely. Circuit split. Yeah. If this panel we would submit is bound by Winston, but the government could, of course, ask for rehearing in bank or take it up to the Supreme Court on that issue. Absolutely. Does it matter at all that for ACCA purposes that the sentence was lawful at the time it was imposed? I don't think so because of the fact that Johnson and Simmons and Newbold are all retroactive. And so I think because of that, there is no, that's not a problem for our claim. And so then that brings us to sort of the dispute under current law, which turns, I think the parties do agree, at least on this part, that this turns on whether his prior Georgia burglary conviction qualifies as an act of predating. And we think it's overbroad for at least two reasons and maybe a third depending on what happens in quarrels. And the two reasons are that on the location element between 1970, 1971 and 1977, that element as applied in Georgia was overbroad. And we think the injury element also has been overbroad always. But I'll start with the location issue, which we outlined in the supplemental briefing. At the time of this offense, the Hayes decision was binding on trial courts in Georgia. And we see from the cases that we cited through the reply brief that prosecutors were routinely charging ordinary vehicle burglaries under the statute. They were sustaining convictions. Trial courts were affirming them. And so that tells us that at the time of the conviction, the elements of this offense were inconsistent with generic burglary. So even though the Supreme Court of Georgia later said that that court of appeals decision was wrong. Yes. That's sufficient. Absolutely. Because under McNeil, we are looking at the law that was controlling and binding at the time of the inquiry. And so in McNeil, there was a statutory change. And the Supreme Court said, well, the defendant can't take advantage of this statutory change that would make him no longer an ACCA qualifier. He has to stick with the law that was in effect when he was convicted. So what would have happened, and this may just go to the insanity of the categorical approach. Let's say that the Georgia Court of Appeals decides the Hayes case. And after that, Mr. Cornett is convicted and sentenced. But then Hayes has gone up on appeal to the Georgia Supreme Court. And then it reverses Hayes, but after Cornett's sentence. What happens? So you're saying that the case that initially set the rule is then reversed by the Supreme Court. That would be an unusual circumstance. I think that one would expect Mr. Cornett himself to have received relief under that rule at the time. Or at least to have had that available to him. And so I think that probably would mitigate the concern we have. It would also be just, I guess, the facts that would make that hypothetical come would be rare. It would have to be in the handful of months. Well, let's assume they happen anyway. What happens? I think that we would have an argument, but it would be a tough one. Because I think at that point, the prosecutors and the state court judges would not have been able to rely on Hayes in the same way that they did in our case. Because Hayes wasn't an established long-standing precedent. It was always in dispute. So someone in Mr. Cornett's position may have raised the same issue, preserved it at the time. So, I mean, I don't want to argue against myself, but I do think that would be a different situation. I don't know that we would have much luck in that context. But here we have the different fact patterns, similar to the one the Eighth Circuit dealt with in Rivlier v. Ramirez, where there's a case that's binding law, recognizes binding law for a several-year period. The conviction undoubtedly occurs during that period. And we have, again, I think this is important, we pointed it out in footnote 2 of the supplemental brief, that in Georgia there is a single court of appeals. The state constitution says that its decisions are binding on trial courts. And you have a state Supreme Court decision that says where we have not spoken on an issue, this is the Johns case, where we've not spoken on an issue, the decisions that are in the court of appeals represent the settled law of our state. So I think for all of those reasons, you have Hayes showing that the statute is overbroad at the time of conviction. That brings, I think, to the question that the government raised in its initial brief, is whether this is divisible. I think that the divisibility inquiry is pretty clearly resolved by this court's precedents, which say that the touchstone for divisibility is jury instructions, and whether they require jury unanimity as to one of the particular alternatives, or whether they allow the jurors to disagree, to go six and six on various alternatives. And if you look at the pattern instructions and you look at the instructions that are approved routinely by the Georgia courts of appeals, they have an alternative disjunctive phrasing, where they instruct the juries that as long as they find that it's either a building or a dwelling place, for example, they can convict. And what about the 11th Circuit's decision, and I think it's Gundy? Gundy, yes. That would seem to go the other way. It would, and Judge Jill Pryor, in her dissent, recognizes that the outcome would be different under this court's precedent. She specifically cites, I believe, it's the Barcenas-Yanez case as an example of a circuit that takes a different approach to divisibility. And so if you look at the reasoning that the Gundy majority employed there, it's inconsistent. We outlined this in our, I believe it was in the opening brief. You know, the Gundy, for example, relied on the fact that this was a finite list, or at least the majority viewed it as a finite list. This court, in cases like Barcenas-Yanez, has said the fact that it's a finite list doesn't matter. In Barcenas-Yanez, it was three different men's rights, knowingly, intentionally, or recklessly. So under the Gundy reasoning, you know, Barcenas-Yanez would have reached a different outcome. And the same is true, as we outlined in the brief, for the other pieces of the Gundy majority's reasoning. And so we think this court's precedent, as Judge Pryor recognized in her dissent, compels the conclusion that it's not divisible. And I think that's backed up by the cases that we point to, where the prosecutors in Georgia are allowed to substitute in one location for the other during the course of the trial. If this were a true element, then it would need to be alleged in the indictment, and the same element would have to be proven to the jury. And we have a consistent pattern of Georgia Court of Appeals cases saying that the prosecution can substitute it. As we highlighted, I think, in the reply brief. What about the Sixth Circuit's decision in Richardson? Neither of the parties discusses that. So Richardson, my recollection of Richardson is it essentially follows Gundy, and so is infirm under this court's precedent. Well, as I read it, what it says is, you know, we've read Gundy. We think the majority in the dissent both make good points, and we've looked through all the things that you just recited, and we can't tell what to do. It's too ambiguous. Therefore, under Mattius, we get to take this constitutionally permissible peak. Right. And so I guess I would have two responses to that. The first is, you know, I think if you get to the point where it's just so muddy that you can't tell, the default under lenity-type principles would go to the defendant in that setting. But even looking at Mattius, I would point to, again, to Judge Pryor's dissent in Gundy, which highlights that some of the indictments in that case refer to an alternative that was entirely outside of the list in the statute. So I think the indictment there was based on a business house, which was not one of the particular alternatives listed in the statute. And I think that shows as another piece of evidence that this is not elements as opposed to means, because if these were true elements, you would have to name one of them. You couldn't name something that's excluded from the statute. And so I think if you get to the Mattius peak, which, again, we think you shouldn't, because we think the case law and the jury instructions are clear, if you get there, we think the outcome ends up being the same. The other thing I would touch on just briefly is the entry element, which we think is also overbroad. Obviously, if you agree with us on location, you don't necessarily need to go to the entry element. But in terms of an alternative holding, we think it would be correct. And the reason is Deskamp says, the Supreme Court says there, that generic entry requires breaking and entering for similar unlawful activity. And so the question then is what counts as similar? And we think that line has to be drawn at the types of entries that create a risk of a violent confrontation. Because if the type of entry doesn't create that risk, then you've lost the entire reason that we treat these generic burglaries as violent felonies in the first place. And so when you're drawing that line, we think it's clear. That's why shoplifting falls on one side of the line, because it doesn't create that risk. And that's why traditional breaking and entering does fall on that side of the line. And so I think the key question is, is the person's physical presence at the time unlawful in a way that everyone around them knows it? Because if it is, that's what creates the risk of an encounter. But if you're in a place like walking through an open house, you know, a house that's for sale, nobody thinks that it's unlawful for you to be there. Nobody's going to encounter you just for being physically present. And so that's the reason that we cited the Price case in the supplemental briefing, which is a relatively recent decision. It's a district court decision. But it reaches this same conclusion that we're asking for in the entry element, is that because of the case law in Georgia allowing false pretense entries to fall within the scope of the statute, that it for that reason is sort of brought on that element as well. If there are no further questions, I thank Gordon. See you on the phone. May it please the court. Anthony Enright for the United States. I want to apologize for my voice this whole week today. If you can't hear me, please let me know. The district court properly dismissed Mr. Cornett's successive 2255 motion challenging his armed career criminal sentence under the rule announced in Johnson for several reasons. One of which is the district court didn't violate the rule announced in Johnson. That rule is you can't increase a defendant's sentence under the residual clause of the Armed Career Criminal Act. The district court never did that. The record makes clear the defendant had three different burglaries, which had been well settled to count as burglary before he was sentenced, and a drug conviction. It's simply implausible that the district court would have considered any of those to be a residual clause qualifier. It would have been the first court to do so. And in any event, the defendant has to prove that, the facts establishing his right to relieve by a preponderance of the evidence. The defendant, defense counsel spoke about the Winston case, but you don't need to go any further than the language of the case itself to see that it was talking about the procedural prerequisite to considering the claim, not the merits. When it held that a defendant, an inmate's sentence may have been predicated on application of the now void residual clause, it therefore may have been an unlawful sentence under the holding of Johnson too, then the inmate is shown that he relies on, in quotes, a new rule of constitutional law within the meaning of 28 U.S.C. 2244 B.2.A. That's a procedural prerequisite. The Winston decision used that term itself several times. That's a procedural prerequisite that you have to go through before the court can consider the merits of a Johnson claim. We're not asserting that, we're not seeking dismissal based on 2244 B.2. We're stating that the defendant cannot prevail on the merits because he's conceded that the record does not establish by a preponderance of the evidence that the district court relied on the residual clause. I also want to talk about the waiver issue. This court has consistently held that waivers of even things like an Armed Career Criminal Act sentence are enforceable, so long as the defendant is informed that the Armed Career Criminal Act may apply. It goes back to the Blick case. The district court, the defendant got exactly what he expected, and the law changed in his favor down the road. That doesn't make it unlawful. There's nothing particularly unusual about waiving an armed career criminal sentence. It does increase the sentence above the statutory maximum that would ordinarily apply, but so does a waiver of the right to contest, for example, a conviction with a guilty plea. Those are a routine component of waivers. There's no good reason, no public policy reason, no reason that makes a waiver of this kind adverse to the interests of justice. This court should follow its precedent. Holding the waivers are valid. The Marin decision specifically spoke about you're protected from being sentenced at the whim of the district court. Resolving a good faith dispute about the application of the Armed Career Criminal Act, especially when you're talking about something as litigation-provoking as the issues that arise in the Armed Career Criminal Act, that's not an act of whimsy. Nobody contests that the district court acted in good faith here, and that's all we're asking. We're asking the court to apply the waiver when the court acts as you would expect, not when it acts. So your authority for the proposition with respect to the change of the law, favorable to the defending the change of the law, is split? Yes, Your Honor. There are several decisions like that. I think Blick, Archie, Brock and Jones. This court has routinely held that a change in the law doesn't warrant escaping a waiver. And I don't think... I didn't recall Blick as implicating a sentence in excess of the statutory maximum. It didn't. I don't think it did, Your Honor. I don't know that this court... So when this court has spoken of a sentence in excess of the statutory maximum, it's generally been a scenario that frankly doesn't arise very often. And that was the case, by the way, in the general decision that my friend points to. We had conceded or didn't ask the court to apply the waiver. So when the court was discussing what Marin said, and it didn't say anything more than what Marin said, which is a sentence above the statutory maximum is outside the scope of the waiver. But Marin itself makes clear that what it's talking about is a situation where the... what statute... what the terms that define the statutory maximum mean, but when the district court acts at a whim. And we don't quarrel with that. Well, Archie doesn't address where a change in the law is made retroactively. Is that correct? I don't think so, Your Honor. And the retroactivity is a separate question. If the defendant were able to... There's not, I don't believe, a general exception for a waiver is when there is a retroactive rule. A retroactive rule doesn't depend on there being an increase above the statutory maximum either. So I don't... I think they're kind of two separate issues. Well, what's your best case? It doesn't have to be necessarily... Sorry, but what's your best case that... where the change in the law would create a sentence above the statutory maximum and then there's an application of the waiver? What's your best case for that? It's United States v. Slusary, Your Honor, in the Sixth Circuit, which is this scenario to a T. There's a fight about whether a predicate conviction, whether a sentence... I think they do say the defendant was able to establish that he was sentenced under a residual clause and they're fighting about whether one of the remaining convictions is still good. And the court says we don't need to get to that. He waived his right to collaterally attack his sentence. And they enforce the waiver in almost exactly the same scenario. I'm asking this court to enforce the waiver today. So that's Slusar, S-L-U-S-S-E-R. It is in our brief. I think I can give you the cite if it is. And if it's not, I apologize, but I'm pretty sure it is. Yeah, it's there. I feel so sorry for being slow on that, Your Honor. I do want to address the burglary issue also. I think Stitt has made this pretty easy. The standard is unlawful entry or remaining in. The Georgia statute requires unlawful entry or remaining in. It requires entry or remaining in without authority. Now, I agree the Georgia court has held that entry by fraud is a form of entry without authority, but that's also a form of unlawful entry or remaining in. So it doesn't take it outside the scope of the generic definition of burglary. In fact, entry by fraud was part of the generic definition of burglary since the 17th century. The Levada Treatise details that. And what Taylor held and Stitt reiterated is that the contemporary generic meaning of burglary is broader than the common law meaning. So I don't think that line of decisions assists the defendant on the issue of the visibility. I don't think we need to get there because every component requires either a dwelling entry. The location has to be a dwelling or a building. Both of those are within the scope of Taylor. Or a structure of some kind that's designed as a dwelling. Well, but at the time Mr. Cornett was convicted and sentenced, the Georgia law appears to be to the contrary. I disagree with that, Your Honor, because the standard for ascertaining what the Georgia law was is this court has routinely held it looks to the Supreme Court of the state, as has the Supreme Court. The Supreme Court incorporated the Erie Doctrine for this question in Johnson 2010. The question is exclusively what is the Supreme Court? What did the highest court of the state do? If the highest court of the state has spoken on the issue, you don't need to go any further. And here they did in DeFrancis v. Manning. And not only did DeFrancis v. Manning specifically hold that the requirement that the structure, in that case a vehicle, had to be designed as a dwelling when it was announced in 1980. It said that applied to a conviction and a conduct that occurred in 1974, two years before the defendant engaged in his conduct. So that particular Supreme Court decision is unequivocal. Not only that that's the law, but that that was specifically the law in 1976. And to a point that I think my friend conceded. If Mr. Cornett had somehow been convicted of entering into a vehicle, but didn't have, wasn't adapted as a dwelling, he could have gotten the same relief that Mr. Manning got ultimately in the Supreme Court. He could have gotten a post-conviction review. He could have taken the issue to the Supreme Court, unlike any of those prior decisions. But under the Urey Doctrine, which is incorporated by Johnson and several decisions by this court, the question is, even if we didn't have that good information, the question is what would the court's highest, the state's highest court do? And obviously the answer is what the state's highest court told us it would do, which is, although that's an element. So I think that answers that question pretty clearly. You don't look to a lower court at all if there's a Supreme Court decision. And if you look at it at all, it's just for evidence of what the Supreme Court, the highest court of the state would do. And here it's evidence that should be disregarded because the Supreme Court of the state specifically said that it would reject that doctrine. On the point about quarrels, I want to make the point that that's waived. It wasn't raised in the defendant's opening brief. Contemporaneous intent. This court has held in Bantilla or Bonilla that the generic definition doesn't require contemporaneous intent. The generic definition as defined by Taylor requires unlawful entry or remaining in the building and also an intent to commit a crime. There's no requirement as this court held that the intent to commit a crime occur at the same time as the initial entry. So I don't think that helps the defendant, even if it weren't waived. On the question of divisibility, Mathis tells us that the best evidence you're going to get is a statement from the Supreme Court of the state. It's that same decision, DeFrancis versus Manning. There's three different parts. You have a dwelling house. You have a list of structures or any other structure adapted as a dwelling. And you have any other building or room thereof. The Supreme Court of DeFrancis specifically picked one of those, looked at one of those, the one in the middle of the building. The vehicle says if it's a vehicle, it has to be adapted as a dwelling. That's an element. So when you have the Supreme Court picking one of the alternatives and saying that's an element, that's about as good evidence as you can get that that's an element, and that the others are elements, that those three components are elements. On the jury instruction issue. So that's your view would be that the statute is not divisible? My view would be that the statute is divisible if the court believes that any of those alternatives are still outside of the generic definition of burglary understood. I believe that the statute, you know, divisibility sometimes is referred to as being anything that has alternatives that are themselves elements. And sometimes divisibility means alternatives, one of which matches the generic definition and one of which does not. I believe that all formulations of burglary in Georgia, at least between 1968 when the statute was passed and 1977 when it was amended, I believe all of those fall within the generic definition of burglary understood. So you don't need to reach the divisibility question unless you disagree with me on that. But if you do, the defendant was specifically charged with and pleaded guilty to entering a dwelling house. That matches the generic definition of burglary if the statute is divisible. And it is divisible, I believe. I don't believe that the jury instructions, the ones that appear in decisions, which I think are worth a little bit more than the secondary source jury instructions, because the secondary source jury instructions have changed even in the last few years. That's something pointed out by Richardson. They don't tell us very much about 1976 jury instructions. But the ones in the decisions all seem to, at least the ones the defendant has identified that I've seen, they all involve a building or dwelling. They don't go so far as to talk about vehicles, cars, airplanes, watercraft. And that's significant because the way the North Carolina courts and the statute itself defines dwelling is a dwelling is a kind of building. So if you have, for example, and this goes to the issue of the variance also, if you have the grand jury indict somebody for entering a dwelling and then the pettit jury convicts him of just a building, both juries have found the defendant has entered a building. That might explain why they don't call it a fatal variance. More likely it explains why the parties didn't bother to fight about this particular issue. It's a pretty rare thing, something pointed out by the dissents in Mathis. It's a pretty rare thing that you actually have a fight about whether the jury has to unanimously agree about whether a location burgled was a rail car or a house. It just doesn't come up that often. So we have to deal with the evidence, the best evidence we have. To go one step further, as Judge Agee mentioned, in Richardson, they go through the Mathis Peek. I think a Mathis Peek is appropriate if the court reaches an invisibility issue, finds it inconclusive. That points us to the Shepard documents in this case, and they speak plainly to use the term of the Supreme Court. They identify dwelling house, not an umbrella term, not like premises or something like that. They make clear that he broke into one of the alternatives listed in the statute, which strongly suggests that those alternatives are themselves elements, things that a defendant necessarily must admit when he pleads guilty, things that are constituent parts of the offense, and things that a jury must find. If this court has no further questions, I will yield the balance of my time back to the court, and I will ask that it affirm the judgment of the district court. Thank you very much, Mr. Enright. Thank you, Your Honor. Mr. Carpenter? So I'm happy to answer any particular questions that the court has that were raised by the government. I do have a question about DeFrancis. Okay. DeFrancis was a habeas case that was applied retroactively. Yes. Why does that not define Georgia law for us? So I think that ties into the point that Mr. Enright suggested, that, you know, maybe if he had actually burgled a vehicle, he could have gotten habeas relief. And I think the reason that argument is wrong is the same reason why DeFrancis being retroactive does not matter, and it's because under the categorical approach, we're looking at what the elements were at the time of the conviction, not what the factual predicate he did or whether the facts as he committed them would have given him the possibility later for habeas relief. Right. But we do look at the statutory maximum. The fact that, you see what I'm getting with the inconsistency. We are, the fact that the sentence wasn't in excess of the statutory maximum at the time it was applied. Yes, I understand. And I think it's kind of what JJ, you said about the craziness of the categorical approach. There is some cognitive dissonance going on in the ways that we do. Some cognitive dissonance? Maybe understating it, but in the different parts of the analysis. And so I think, though, that what we are bound to do by precedent, for example, by McNeil in the Supreme Court, and I think that is the key point the government points to Erie, and rightly so. In Erie, you do, this court does, make a predictive judgment about what the future law would hold. And it does that because it's in a now, a here and now situation. We've got a dispute between two parties in civil diversity jurisdiction. And your question is, if this were instead in state court, how would the state court resolve it? That's a forward-looking analysis, and that makes sense. Was that true in Johnson? Was that how it was used? That was not my recollection, but my recollection is very hazy. Well, and the reason is that they're different, and that's why McNeil is so different in this context. Civil diversity, we look forward, we do a predictive approach. Right, that was my point. Exactly, and McNeil says that's not what we do in ACA land. In ACA land, we put on our blinders and we look at what the law was at the time of the conviction. And if there's a subsequent change in state law in McNeil, it would have benefited the defendant. He didn't get to take advantage of it. Here, the subsequent change in state law would have benefited the government. They don't get to take advantage of it either. We put our blinders on, and whichever way it falls, sometimes the subsequent law changes help us, sometimes they help the government. Except for purposes of the waiver. Well, for waiver, and I think the point is you cannot, and I, first of all, will agree that Slusser is contrary authority. It's from the Sixth Circuit. It's inconsistent with this Court's precedent. And there is a fairly well-developed circuit split on it. We cite in our reply brief cases that take our position from the Eighth Circuit in Daru, from the Tenth Circuit, from, I believe, the Ninth Circuit as well. The Ninth Circuit has an exceptionally broad policy. Any claim that a sentence is unconstitutional cannot be waived. So that's the broadest iteration. So the Supreme Court may take this up. Maybe the government will take this case to do it. But I would add, in terms of public policy reasons, the simple reason that a waiver should not be enforceable in these circumstances is that the parties can't agree to illegal sentences. And, for example, if the parties had entered into a plea agreement that says, I'm pleading guilty to this offense, the statutory minimum is ten years, but we are going to agree that five years is the appropriate sentence, the courts would not enforce that agreement. Right. But it's illegal through what lens? Right. And that's what comes to, I think, Judge Floyd's very first question, which is, the lens has to be, is it illegal now, based on retroactive decisions now? The question, it doesn't matter to us whether it was illegal or not at the time. Because at the time, the residual clause was the law of the land. The Supreme Court had affirmed it. Once Johnson comes and is retroactive, we have to look, is continuing to allow that sentence to stay in place, is it illegal now? If so, we have to correct it. I will also mention the government noted that in Marin, the government had, or excuse me, that in general, the government had conceded this point. And that's because virtually every U.S. Attorney's Office in this circuit has been conceding this issue since general. And I pointed to several of them in our briefs, the van case, the one conceding. Conceding the waiver issue. Conceding the waiver issue, exactly. They've been conceding that if you look at Marin, it says exactly what we're saying it says. Sentence that are above, if you're arguing that your sentence is above the statutory maximum, that's an illegal sentence. So are you saying if Johnson wasn't retroactive, it would have come out the other way? I'm still wrestling, I'm still wrestling with this defrancis. Yes. So I wish there was a way to make the categorical approach make sense. I know we all do. And I think this is just one of the tensions that stays in ACCA, the way it's interpreted now, is you have to look at the law at the time it applied, but you also apply these retroactive decisions. And so it's a strange situation for sure. A couple of other points I wanted to touch on. My colleague suggested that I've conceded that the record doesn't establish reliance. That's not accurate. What I conceded is the record is silent. Winston, again, as I mentioned before, the government wants the merits to be about this historical, look back at the record and what was said. But if you look at 862 of Winston, it describes the merits as this inquiry under current law. And so that is what this court is bound to follow. One other point is that in quarrels, I would say we've not waived that. Quarrels, if it comes out our way, will be an intervening decision that might benefit us. Just like Stitt was an intervening decision that benefited the government. So to the extent it ends up mattering, I would submit that that wasn't waived. If the court has any further questions, we have to address them. Otherwise, I thank you very much for your time. Thank you very much. We will ask the clerk to adjourn court for the day and come down and move counsel. And thank you both, too, for those very thoughtful arguments. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Allyson K. Duncan, G. Steven Agee, Henry F. Floyd